UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Donna Russo-Lubrano,

                                    Plaintiff,      CV-06-0672 (CPS)

        - against -
                                                    MEMORANDUM
Brooklyn Federal Savings Bank, and                  OPINION AND ORDER
Marc Leno, Richard A. Kielty, and
Joseph Raucci, as agents of Brooklyn
Federal Savings Bank and in their
individual capacities,

                                    Defendants.

----------------------------------------X

SIFTON, Senior Judge.

        On February 15, 2006, plaintiff Donna Russo-Lubrano filed a

complaint against Brooklyn Federal Savings Bank ("BFSB" or "the

bank") and employees Marc Leno, Richard Kielty, and Joseph

Raucci,[1] as agents of BFSB and in their individual capacities,

alleging that the defendants were liable for damages on the

following grounds: (I) discrimination on the basis of sex, in

violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e-2 ("Title VII"); (II) retaliation, in violation of Title

VII, 42 U.S.C. § 2000e-3(a); (III) discrimination on the basis of

pregnancy, in violation of Title VII, 42 U.S.C. § 2000e(k); (IV)

conspiracy, in violation of the Civil Rights Act of 1871, 42

---

        [1] Leno is the Vice-President and Chief Loan Officer of BFSB.  Kielty is
the Executive Vice-President and Chief Financial Officer.  Raucci is an
Assistant Vice President and the Assistant Financial Officer.

U.S.C. § 1985(3); (V) discrimination on the basis of age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623 ("ADEA"); (VI) discrimination on the basis of sex, in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206 *et seq.*; (VII) discrimination, in violation of the Employee Retirement Income Security Act, 1963, 29 U.S.C. § 1000 *et seq.* ("ERISA"); (VIII) discrimination on the basis of sex, in violation of New York State Executive Law § 296; (IX) retaliation, in violation of New York State Executive Law § 296; (X) discrimination on the basis of pregnancy, in violation of New York State Executive Law § 296; (XI) discrimination on the basis of gender, in violation of New York City Administrative Code § 8-107 and § 8-502; (XII) retaliation, in violation of New York City Administrative Code § 8-107 and § 8-502; (XIII) discrimination on the basis of pregnancy, in violation of New York City Administrative Code § 8-107 and § 8-502; (XIV) intentional infliction of emotional distress and intentional interference with employment contract under New York common law.  Now before this Court is defendants' motion to dismiss Counts (I), (II), (IV), (V), (VII), (VIII), (IX), (XII), and (XIV) in their entirety and Counts (I), (II), (III), (V), (VI), (VII), (VIII), (IX) and (X) as to the individual defendants.  For the reasons set forth below, defendants' motion is granted, with leave to amend the complaint as noted.

**Background**

The following facts are drawn from the complaint and viewed in the light most favorable to the plaintiff, the non-moving party. *See Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002).

From 1984 until February 2005 plaintiff was employed by BFSB. Throughout her career, she was consistently rated an excellent employee and regularly received the highest pay increases available, as well as bonuses which "exceeded the usual limits." Complaint, § 17. In 2004, plaintiff, who was forty years old at the time, made known to the defendants that she was pregnant. She requested and received the standard twelve week maternity leave.[2] At that point she was an Assistant Vice President, was vested in the company pension plan and had an active 401(k) account. *See* 26 U.S.C. § 401(k).

After announcing her pregnancy, plaintiff was subjected to discriminatory comments and treated in a hostile and negative manner by her supervisors, based on her gender, pregnancy and status as a working mother. This resulted in a "hostile working environment and affected the terms and conditions of her employment." Complaint, § 22.

Plaintiff's last day of work before her maternity leave was

---

[2] Plaintiff believes that she is the oldest female employee in the bank's history to become pregnant and request maternity leave.

October 8, 2004.  At all times she kept her employers (in particular, defendants Leno and Kielty) informed that she would be returning to work after her leave.  Plaintiff was due to return to work on January 19, 2005.

On October 21, 2003, plaintiff gave birth by caesarean section and suffered medical complications.  The child was placed in a prenatal intensive care unit and upon discharge required oxygen treatment six times daily, administered by the plaintiff.  Plaintiff made her employers, including Leno and Raucci, aware of the situation by phone and fax.

Twice in December 2004, while still on leave, plaintiff returned to BFSB to assist on projects which she knew she would be involved in upon her return.  On January 3, 2005, plaintiff's child became very ill with a respiratory syncytial virus that required weekly doctor visits.  The doctor also directed that the infant not be taken out of the home or interact with others to prevent its contracting illnesses.  As a result, the infant's baptism was cancelled and child care could not be provided by third parties.  Plaintiff promptly notified Leno of these issues.  Plaintiff also informed the bank that she would be filing for disability payments through her private insurer and which would last through February 2005.  Plaintiff later filed for disability with New York State which also approved her claim and she made her employer aware of the approval.  During this period of time,

plaintiff spoke to defendant Leno at least once a week and, among other things, discussed her health and the health of her child.

On February 22, 2005, plaintiff was terminated by BFSB. Plaintiff's bonus for 2004 was reduced pro-rata based on her maternity leave.[3]  In addition, plaintiff's termination precluded her from "fully" availing herself of the employee stock benefit plan which resulted from the bank's becoming a public company, a process which had begun before she was terminated. Complaint, § 35.

Defendants never formally provided plaintiff with a reason for plaintiff's termination.  However, in conversations with unidentified representatives of the defendants after her termination, plaintiff was informed that she was fired "due to her child's health and her status as a working mother";[4] to plaintiff's knowledge, no male employees of the bank have been terminated due to their children's health or their status as a working parent.    Complaint, § 30.

*Procedural History*

On March 15, 2005, plaintiff filed a verified complaint with the Equal Employment Opportunity Commission ("EEOC") and the New

---

[3] Plaintiff states that during a prior period of non-pregnancy related disability, her bonus was not pro-rated and that other employees (both male and female) who take disability leaves do not have their bonuses pro-rated.

[4] Plaintiff does not say with whom she had these conversations.

York Division of Human Rights Equal Employment Opportunity
Commission, alleging discrimination and retaliation by the
employees of BFSB.  After requesting a 'right to sue' letter from
the EEOC, plaintiff was provided with such a letter on October
21, 2005.  Plaintiff filed suit in this Court on February 15,
2006.  Defendants filed the present motion to dismiss on May 19,
2006.


## Discussion

*Jurisdiction*

The court has federal question jurisdiction over Counts I,
II, III, IV, V, VI and VII pursuant to 28 U.S.C. § 1331.  As to
the state and local law claims, this Court may exercise
supplemental jurisdiction pursuant to 28 U.S.C. § 1367.


*Motion to Dismiss*

Defendants seek dismissal of certain counts of plaintiff's
complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)
for failure to state a claim.  In considering a motion pursuant
to Rule 12(b)(6), a court should construe the complaint
liberally, "accepting all factual allegations in the complaint as
true, and drawing all reasonable inferences in the plaintiff's
favor," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.
2002)(internal citations and quotations omitted), although "mere

conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Helt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). In a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995). Dismissal is appropriate only when it "appears beyond a doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Sweet v. Sheahan,* 235 F.3d 80, 83 (2d Cir. 2000). This rule "is to be applied with particular strictness when the plaintiff complains of a civil rights violation." *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991). Additionally, a complaint should be dismissed under Rule 12(b)(6) if a court finds that the plaintiff's claims are barred as a matter of law. *Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86 (2d Cir. 2000).

*I. Fair Notice: Counts I, V and VIII*

In Counts I, V, and VIII, plaintiff claims discrimination on the basis of her gender and age. Defendants argue that plaintiff's complaint fails to allege sufficient facts to provide them with fair notice.

In *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506 (2002), the Supreme Court ruled on the pleading standards for employment

discrimination cases under Title VII.  There, the Court found that plaintiffs need only satisfy the "simple requirements" of Federal Rule of Civil Procedure 8(a) for a "short and plain statement of the claim."[5] *Id.* at 512-13.  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id*. at 512.  So long as the complaint "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests" it is sufficient. *Id.* (internal citations and quotations omitted).  In *Swierkiewicz*, which was brought under Title VII and the ADEA, the Court found that since the complaint "detailed the events leading to [plaintiff's] termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination," the pleading was sufficient.

However, as the Second Circuit has recently held, the holding in *Swierkiewicz* does not mean that "[p]laintiffs bear no

---

[5] In relevant part, the rule reads:

A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.

Federal Rule of Civil Procedure 8(a).

burden at the pleading stage." *Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 343 (2d Cir. 2006). Rather, "a plaintiff must allege, as the Supreme Court has held, those facts necessary to a finding of liability . . . . [and] a plaintiff's allegations, accepted as true, must be sufficient to establish liability." *Id.* at 343-44. In other words, "while the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." *Id.* at 344 (internal citations and quotations omitted); *see Whyte v. Contemporary Guidance Serv.s*, 2004 WL 1497560, at *3 (S.D.N.Y. 2004) (noting that "[f]air notice is lacking when the complaint is so 'confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised'" and finding that where the plaintiff in a Title VII case fails to "provide notice of the relevant facts underlying [the] discrimination claims and specifically how his age, gender, race, and national origin played a factor in the alleged disparate treatment," notice is insufficient and a motion to dismiss should be granted) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)); *see also Prince v. Cablevision Sys. Corp.*, 2005 WL 1060373, at *10 (S.D.N.Y. 2005) (finding that where plaintiff in Title VII case had failed to allege "any conduct by co-workers [other than one incident] . . . that occurred in the workplace that would support [the] conclusory allegation of a 'sexualized atmosphere,'" the claims must be

dismissed for failure to provide fair notice of the "facts and grounds which could support them"); *Valle v. Bally Total Fitness*, 2003 WL 22244552, at *6 (S.D.N.Y. 2003); *Straker v. Metropolitan Transit Authority*, 333 F.Supp.2d 91, 102 (E.D.N.Y. 2004) (a count "which contains no facts supporting the grounds upon which [the] claim of race discrimination rests, must . . . be dismissed").

1) Count I: Gender Bias and Sex Discrimination

Plaintiff alleges in Count I that she was discriminated against in violation of 42 U.S.C. § 2000e-2 due to her "gender, pregnancy and status as a working mother."[6] Complaint, § 40. In support of this allegation, plaintiff states that she was subject to "repeated situations involving gender bias, and sexual discrimination," including "negative comments regarding her gender, pregnancy and status as working mother." Complaint, §§ 39(a), 41. She also alleges that she "was subjected to discriminatory comments and treated in a hostile and negative manner by her supervisors based upon her status as a pregnant woman" after she announced her pregnancy and that she was "informed that [her] termination was due to . . . her status as a

_____

[6] The statute states, in relevant part, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

working mother." Complaint, §§ 22, 30.

Title VII suits can be based on either a "disparate treatment" claim, where the plaintiff alleges that a specific discriminatory employment action was taken on the basis of impermissible considerations, or a "hostile work environment" claim, where the plaintiff alleges that the work environment was severely abusive as to her sex, race, etc. *Galvez v. New York Mortg. Co., LLC,* 2005 WL 2124112, at *5 (S.D.N.Y. 2005);[7] *see National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115 (2002) ("Hostile environment claims are different in kind from discrete acts" such as termination").

In the present case, plaintiff's allegations in Count I allege both that her gender "was used as the basis for adverse employment decisions" and that the "adverse actions . . . had the effect of creating a hostile, intimidating and offensive work environment." Complaint, §§ 40, 41. Count I thus conflates a "disparate treatment" claim for termination on the basis of gender and the different claim of a "hostile work environment."[8] These claims are distinct and should not be alleged in a single

---

[7] "Hostile work environment claims must meet both an objective and a subjective standard. Not only must the victim herself subjectively perceive the environment to be abusive, but the misconduct of which a plaintiff complains also must be severe or pervasive enough to create an objectively hostile or abusive work environment." *Galvez,* 2005 WL 2124112 at *5.

[8] Indeed, the complaint appears to have been copied and pasted from previous complaints filed by plaintiff's attorneys, at one point in Count XIV referring to plaintiff's "quit[ting] her employment at defendant NYPD," clearly an allegation left over from a previous complaint. Complaint, § 97.

count under Rule 10(b) of the Federal Rules of Civil Procedure.[9]
*See Gonzalez v. Police Com'r Bratton,* 2000 WL 1191558, at *20
(S.D.N.Y. 2000) ("Conceptually, this [disparate treatment] claim
is distinct from that of hostile environment sexual harassment,
which, while also necessarily constituting a type of
discrimination grounded on gender, requires different pleading
and proof than a disparate treatment claim"); *Harris v.
Radioshack Corp.,* 2002 WL 1907569, at *2 (S.D.Fla. 2002) ("If
Plaintiff desires to assert discrimination claims under various
theories, these claims must be asserted in separate counts in
accordance with Fed.R.Civ.P. 10(b)").  Accordingly, Count I is
dismissed with leave to amend within 30 days. *See* Fed.R.Civ.P.
15(a) ("leave shall be freely given when justice so requires");
*Whyte,* 2004 WL 1497560 at *5 (granting leave to amend where
complaint contained insufficient factual basis under
*Swierkiewicz*).[10]

---

[9] In relevant part, the rule states:

(b) Paragraphs; Separate Statements. All averments of claim or
defense shall be made in numbered paragraphs, the contents of each
of which shall be limited as far as practicable to a statement of
a single set of circumstances; and a paragraph may be referred to
by number in all succeeding pleadings. Each claim founded upon a
separate transaction or occurrence and each defense other than
denials shall be stated in a separate count or defense whenever a
separation facilitates the clear presentation of the matters set
forth.

Fed.R.Civ.P. 10(b)

[10] Accordingly, no determination is made on the factual sufficiency of
the pleadings.  However, in the interest of avoiding redundant proceedings in
the future, I note that plaintiff does appear to have pled enough facts to
raise a sufficient inference of discriminatory termination, namely that

2) Count V: Age Discrimination

Count V alleges age discrimination in violation of the

ADEA.[11]  As in Count I, this count also alleges both "adverse

---

supervisors made discriminatory comments to her after she announced her pregnancy, that she was subsequently terminated after taking maternity leave despite being a highly rated employee, that she was informed that her termination related to her status as a working mother, that similarly situated male employees have not been terminated due to their status as a working parent, and that other employees who take non-pregnancy related disability leaves do not have their bonuses pro-rated.  These allegations constitute more than "bald assertions" and give the defendants notice of the alleged discriminatory termination itself and well as the timing and participants involved in that conduct. *See Kearney v. ABN AMRO Inc.*, 2006 WL 2354819, at *6 (S.D.N.Y. 2006) (noting that "at the pleading stage, it is sufficient that a plaintiff provide facts that simply give rise to an inference of discrimination" and finding gender discrimination to be sufficiently pled where plaintiff alleges several supporting facts and clearly set forth her claim that males were being paid more than similarly situated females); *Swierkiewicz,* 534 U.S.

A hostile workplace claim, on the other hand, would give rise to a closer question. *See Tenney v. Essex County/Horace NYE Home,* 2006 WL 126766, at *3 (N.D.N.Y. 2006) (to survive a motion to dismiss on a Title VII claim, "a plaintiff must establish . . . (1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer") (internal citations and quotations omitted).  Plaintiff alleges that her supervisors generally made comments about her pregnancy and treated her in a hostile manner, states approximately when these actions occurred (after she announced her pregnancy), and also states the basis for the comments and hostile behavior (her pregnancy).  However, the alleged misconduct is described in very generalized terms ("plaintiff was subjected to discriminatory comments and treated in a hostile and negative manner by her supervisors based upon her status as a pregnant woman") and courts in this circuit have dismissed hostile workplace claims for lack of fair notice when the alleged "harassment was not of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." Complaint, § 22; *Gratton v. Jetblue Airways,* 2005 WL 1251786, at *9 (S.D.N.Y. 2005); *see also Schiappa, Sr. v. Brookhaven Science Assoc.s, LLC,* 403 F.Supp.2d 230, 235 (E.D.N.Y. 2005) ("vague and conclusory allegations of an alleged policy or practice, such as [the] claim that disabled and older employees 'were subjected to both harsher and unsafe working conditions' are insufficient to state a claim; *but see Harrison v. New York City Admin. for Children's Services,* 2003 WL 22271219, at *5 (S.D.N.Y. 2003) (motion to dismiss denied where "the complaint provides Defendants fair notice of what the claim is (harassment) and the grounds upon which it rests (based on race, gender, and color)").  Plaintiff would do well to draft any amended complaint to comport with these standards.

[11] The statute states, in relevant part, "It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

employment decisions" on the basis of the plaintiff's age and the creation of a "hostile, intimidating and offensive work environment."[12] Complaint, §§ 57, 58.  For the same reasons discussed above, this count fails to comply with the pleading requirements of Rule 10 and is therefore dismissed, with leave to amend within 30 days.[13]

3) Count VIII: Gender Bias and Sex Discrimination

Count VIII alleges that plaintiffs violated New York State Executive Law § 296 by discriminating on the basis of gender and

---

individual's age." 29 U.S.C. § 623(a).

[12] Courts in this circuit have allowed "hostile work environment claims" to be made under the ADEA. *See Boise v. Boufford*, 121 Fed.Appx. 890, 893 (2d Cir. 2005); *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

[13] Again, no determination is made on the factual sufficiency of the pleadings.  However, I note that plaintiff does appear to have pled enough facts to raise an inference of termination on the basis of age, namely that she was forty (which places her in the protected class under 29 U.S.C. § 631(a)), that she was a highly rated employee and that, to her knowledge, she was the oldest employee to become pregnant and take maternity leave.  *See Vallone v. Banca Nazionale del Lavoro, New York Branch,* 2004 WL 2912887, at *3 (S.D.N.Y. 2004) (complaint was sufficient where it alleged "that Plaintiffs were over the age of 40 and that they were fired based on their ages"); *Moskowitz v. Alliance Capital Mgmt., Inc.*, 2003 WL 22427845, at *1 (S.D.N.Y. 2003) (complaint was sufficient where it alleged "that Plaintiff was 60 years old at the time his employment was terminated" and that he was singled out because of his age); *Cellamare v. Millbank, Tweed, Hadley & McCloy LLP,* 2003 WL 22937683, at *5 (E.D.N.Y. 2003) (finding that complaint was sufficient where plaintiff alleged that she was in her 40s, that she was terminated because of her age and that defendant was hiring younger people to replace her and noting that the question as to whether defendant was actually replacing plaintiff with a younger employee was a factual matter appropriate for summary judgment); *Weinberg v. Mizuho Capital Markets Corp.,* 2003 WL 22462022, at *3 (S.D.N.Y. 2003) (complaint was sufficient where plaintiff merely claimed that his contract was not renewed because of his age, which was 53).  In contrast, plaintiff has alleged no factual basis whatsoever which would support a finding that defendants created a hostile workplace in violation of the ADEA.

sex.[14]  As the complaint notes, this "law also makes it unlawful
to create an atmosphere which is abusive and hostile." Complaint,
§ 73; *See Constantine v. Kay*, 792 N.Y.S.2d 308, 311 (N.Y.Sup.Ct.
2004) ("Sexual discrimination which establishes a hostile work
environment constitutes a violation of . . . Executive Law §
296") (citing *San Juan v. Leach*, 717 N.Y.S.2d 334, 336(N.Y. App.
Div. 2000).  "The standards for proving discrimination under
Section 296 of the New York Executive Law are the same as under
Title VII . . . . Accordingly, the New York Executive Law inquiry
is subsumed within the Title VII analysis." *Lucas v. South Nassau
Communities Hosp.,* 54 F.Supp.2d 141, 146 (E.D.N.Y. 1998).

Since Count VIII, like Counts I and V, fails to distinguish
between a claim for unlawful termination and a claim on the basis
of a hostile work environment, this count is also dismissed, with
leave to amend within 30 days.

## II. *Retaliation Claim - Counts II, IX and XII*

In July 2006 the parties stipulated that these counts have
been withdrawn in their entirety.  Accordingly, the motion to
dismiss these counts is moot.

---

[14] Under this statute, it is unlawful for an employer "because of the
age, . . . sex, . . . or marital status of any individual, to refuse to hire
or employ or to bar or to discharge from employment such individual or to
discriminate against such individual in compensation or in terms, conditions
or privileges of employment." New York State Executive Law § 296.

*III. Intracorporate Conspiracy Doctrine - Count IV*

At oral argument on January 11, 2007, the parties stipulated that this count had been withdrawn in its entirety. Accordingly, the motion to dismiss this count is moot.

*IV. ERISA Claim - Count VII*

At oral argument on January 11, 2007, the parties stipulated that this count had been withdrawn in its entirety. Accordingly, the motion to dismiss this count is moot.

*V. Intentional Infliction of Emotional Distress - Count XIV*

In Count XIV, plaintiff contends that the defendants, in violation of New York state law, "intentionally inflicted the aforesaid acts of gender bias, sexual discrimination, pregnancy discrimination and retaliation upon the plaintiff, with malice, and without legal, economic, business or social justification or excuse, and did so for the sole purpose of causing her emotional distress and anguish." Complaint, § 97.[15]

Under New York State law, claims of Intentional Infliction of Emotional Distress ("IIED") have a one year statute of

---

[15] The sentence concludes "and ultimately forcing her to quit her employment at defendant NYPD." Complaint, § 97. As noted above, the reference to quitting employment appears to have been included inadvertantly, since plaintiff nowhere else alleges that she quit her job, or that she was an employee of the NYPD.

limitations.[16]  N.Y.Civ.Prac.L. & R. § 215(3); *Neufeld v.*

*Neufeld*, 910 F.Supp. 977, 981 (S.D.N.Y. 1996).  Plaintiff filed

her complaint on February 15, 2006 and contends that the conduct

included the actual termination, which occurred on February 22,

2005, and therefore her claim was filed within the limitations

period.[17]  However, to present a valid claim for IIED, plaintiff

---

[16] "The court borrows the relevant state statute of limitations as to pendent state claims." *Gardner v. St. Bonaventure University,* 171 F.Supp.2d 118, 128 (W.D.N.Y. 2001) (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464 (1975)).

[17] Plaintiff has not argued in her papers on this motion that the statute of limitations should have been tolled as of the date plaintiff filed her complaint with the EEOC, March 15, 2005.  For the sake of completeness, I note that while some courts in this circuit have held that the statute of limitations on an IIED claim is tolled during the pendency of an EEOC claim, "[t]he weight of authority . . . has held that state common law claims are not tolled during the pendency of an . . . EEOC claim." *Smalls v. Allstate Ins. Co.,* 396 F.Supp.2d 364, 375 (S.D.N.Y. 2005) (quoting *Duran v. Jamaica Hosp.*, 216 F.Supp.2d 63, 68 (E.D.N.Y. 2002)).  As the court in *Duran* points out, courts which have favored tolling the statute of limitations do so for one of two reasons: "(1) to avoid duplicative litigation and judicial inefficiency, and (2) to further one of the central purposes of Title VII by allowing administrative organizations the opportunity to investigate allegations of employment discrimination in order to facilitate dispute resolution before litigation commences." 216 F.Supp.2d 63, 67 (internal citations and quotations omitted).  However, the reason that most courts refuse to toll the statute of limitations "is that a timely state law complaint could have been filed at the same time as the Title VII claim without the prerequisite that it go before an administrative body." *Id.*, at 68.  In declining to toll state common law claims, courts in this circuit have also relied on analogous reasoning in *Johnson v. Railway Express Agency*, 421 U.S. 454 (1975).  In *Johnson*

> the plaintiff brought an action against his employer and union for alleged employment discrimination pursuant to Civil Rights Act of 1866, 42 U.S.C. § 1981.  The plaintiff in *Johnson* also timely filed a employment discrimination charge with the EEOC pursuant to Title VII of the Civil Rights Act 1964.  The court held that despite the timely EEOC filing, since the 1981 remedy was fundamentally separate and independent from the procedures of Title VII, it did not toll the statute of limitations.

216 F.Supp.2d 63, 68. *See Johnson*, 421 U.S. at 466.  In cases like this one, "[j]ust as in *Johnson* . . . the remedies Plaintiff seeks pursuant to her state and Title VII claims are distinctive.  In intentional tort claims, the plaintiff seeks to be free from injury caused by another person, whereas in the discrimination claims, plaintiff is pursuing freedom from discrimination in the workplace." 216 F.Supp.2d 63, 68 (internal citations and quotations

must allege a wrongful act that occurred within the limitations period which could *itself* serve as the basis for an IIED claim. *Cahill v. Northeast Sav., F.A.*, 1993 WL 313633, at *12 (N.D.N.Y. 1993) (noting that even where the doctrine of continuous tort applies, which allows a court to look at events outside the limitations period if they are part of a continuing pattern of activity that extends into the limitations period, there must be an independently actionable violation which is not barred by the statute of limitations); *Neufeld*, 910 F.Supp. at 983 (noting that the continuous tort doctrine only applies when actionable conduct occurred within the limitations period); *Bonner v. Guccione*, 916 F.Supp. 271, 277 (S.D.N.Y. 1996) ("the conduct that falls within the limitations period must be in and of itself actionable conduct and not merely the effect of prior tortious conduct"). Therefore, in the present case, plaintiff's termination, which is the only alleged conduct which occurred within the limitations period, must be independently sufficient to state a claim for IIED.

In New York, a claim for IIED has four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe

---

omitted).  Therefore, "[d]espite the laudable interest in judicial economy expressed by courts that have tolled the state statute of limitations, [district courts] must respect the general principle that statute of limitations schemes are exclusively the prerogative of the legislature and, absent a clear legislative declaration that any tolling is permissible, the courts should be reluctant to imply one." *Id*. (internal citations and quotations omitted).  Accordingly, I decline to toll the statute of limitations from the date of plaintiff's EEOC filing.

emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). Since the alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community," *Fischer v. Maloney*, 43 N.Y.2d 553, 557 (N.Y. 1978), satisfying the 'outrageousness' element "is difficult, even at the pleadings stage." *Fahmy v. Duane Reade, Inc.,* 2005 WL 2338711, at *7 (S.D.N.Y. 2005) (internal citations and quotations omitted). Particularly in the employment context, "New York courts are exceedingly wary of claims for intentional infliction of emotional distress . . . because of their reluctance to allow plaintiffs to avoid the consequences of the employment-at-will doctrine by bringing a wrongful discharge claim under a different name." *Mariani v. Consol. Edison Co. of New York, Inc.,* 982 F.Supp. 267, 275 (S.D.N.Y. 1997) (noting that there is no tort claim for wrongful discharge in New York State); *see also Fahmy*, 2005 WL 2338711 at *7. Federal courts applying New York law regularly dismiss IIED claims. *See Gerzog v. London Fog Corp.*, 907 F.Supp. 590, 604 (E.D.N.Y. 1995) (noting that it is almost exclusively in cases which involve inappropriate sexual conduct, "and more significantly, battery," where courts have declined to dismiss IIED claims); *Mariani*, 982 F.Supp. at 275

(citing cases).  To survive a motion to dismiss, "[t]he conduct alleged must be such that it can be fairly characterized as egregious, utterly despicable, heartless or flagrant.  Acts which merely constitute harassment, disrespectful or disparate treatment, a hostile environment, humiliating criticism, intimidation, insults or other indignities . . . [are] not sufficiently outrageous." *Lydeatte v. Bronx Overall Economic Development Corp.,* 2001 WL 180055, at *2 (S.D.N.Y. 2001); *see also Freedom Calls Found. v. Bukstel,* 2006 WL 2792762, at *3 (E.D.N.Y. 2006) ("Courts in the Second Circuit, when considering . . . emotional distress claims under New York law, have noted that even if a defendant has acted with an intent which is tortious or even criminal, or has intended to inflict emotional distress, or has even engaged in conduct that has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort, there can be no claim if the conduct at issue is not utterly reprehensible").

Even if plaintiff's allegations in her complaint true, as I must presume they are, and she was terminated on the basis of her gender, age, pregnancy and the illness of her child, they fail to meet the threshold for outrageous conduct. *See Belanoff v. Grayson*, 471 N.Y.S.2d 91 (N.Y.A.D. 1984)(summary judgment granted against plaintiff who was given negative evaluations, suspended

from work and ultimately fired due to alleged discrimination on the basis of her sex and marital status and retaliation for opposing unlawful practices); *Leibowitz v. Bank Leumi Trust Co. of New York,* 548 N.Y.S.2d 513, 521 (N.Y.A.D. 1989) (upholding dismissal of IIED claim which was based on the use of "deplorable and reprehensible" ethnic and racial slurs); *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (dismissing IIED complaint alleging, among other things, termination based on plaintiff's age, as falling "far short" of the required standard); *Realmuto v. Yellow Freight Sys., Inc.*, 712 F.Supp. 287 (S.D.N.Y. 2000) (plaintiff's allegations that he was discharged for "illicit reasons" motivated by his age do not establish a claim for IIED); *Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F.Supp. 667 (S.D.N.Y. 1995)(summary judgment granted on IIED claim where plaintiff claimed she was discriminated against, and later fired, because she was a woman, became pregnant, and had a baby); *Lydeatte v. Bronx Overall Economic Development Corp.,* 2001 WL 180055, at *2 (S.D.N.Y.,2001) (dismissing IIED claim alleging discrimination based on race, which led ultimately to termination, even though such allegations might be sufficient for an employment discrimination claim); *Harvender v. Norton Co.,* 1997 WL 793085, at *4 (N.D.N.Y. 1997)(IIED claim dismissed where defendant, upon learning that plaintiff was pregnant, placed her on immediate unpaid leave and told her that if her condition did

not change within twelve weeks, at which point she would still be

pregnant, she would lose her job); *Stella Stylianou v. St.*

*Luke's/Roosevelt Hosp. Center,* 902 F.Supp. 54, 56 (S.D.N.Y. 1995)

(two year pattern of harassment and humiliation insufficient for

IIED claim); *Silberstein v. Advance Magazine Publishers, Inc.,*

988 F.Supp. 391, 392 (S.D.N.Y. 1997) ("discrimination on the

basis of gender or condition of pregnancy . . . is intolerable .

. . [but] insufficient to lift plaintiff's case over the hurdle

established by the New York Court of Appeals); *Martin v.*

*Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir. 1985) (employee who

was allegedly given a polygraph based on race failed to establish

a claim for IIED "despite unacceptability of racial

discrimination in civilized society"); *Benjamin v. N.Y.C. Dept.*

*of Health,* 2002 WL 485731, at *1 (S.D.N.Y. 2002) (IIED claim

dismissed where plaintiff alleged a long pattern of

discrimination based on national origin, including "mimicking

Plaintiff's accent and cultural mannerisms in front of the staff,

sabotaging Plaintiff's job efforts, and accusing Plaintiff of

falsehoods").[18]  The alleged conduct here which occurred within

_____

[18] The limited number of cases in which federal courts have allowed IIED
claims not based on inappropriate sexual conduct to proceed are easily
distinguishable.  In *Polley v. Federal Reserve Bank of New York* the court
denied defendant's motion summary judgment where the plaintiff alleged a
multi-year patter of racial harassment, which establish a "long-term pattern
of discrimination." 1994 WL 465923, at *1 (S.D.N.Y. 1994).  In *Zaffino v.
Surles*, the court also denied defendant's motion for summary judgment in a
case where plaintiff was "locked out of his office, shunted to a filthy,
cluttered storage room, stripped of all executive responsibilities, relegated
to menial tasks, deprived of elevator keys and mail keys, deprived of a
parking spot adjacent to the facility, removed from executive meetings and

the limitations period was termination on the basis of improper motivations, which, though possibly sufficient for an employment discrimination claim, does not rise to the level of outrageousness required for an IIED claim in New York. Accordingly, plaintiff has failed to state a claim which would support a finding of IIED and this count must be dismissed.[19]


*VI. Interference with Employment Contract – Count XIV*

To the degree that Count XIV deals with an implied employment contract, the claim has been withdrawn by stipulation. Accordingly, the motion to dismiss is moot.


*VII. Individual Liability under Title VII, the PDA and the ADA – Counts I, II, III and V*

By stipulation, the claims against individual defendants have been withdrawn as to Counts I, III and V and the entire claim under Count II has been withdrawn. Accordingly, the motion

---

required to report to a person in a subordinate civil service rank." 1995 WL 146207, at *5 (S.D.N.Y. 1995). In both these cases, the defendants allegedly engaged in repeated and long-term activities, in contrast to our case. Moreover, as the court in *Mariani* points out, these cases "contain minimal analysis and support for their holdings and are not persuasive." 982 F.Supp. at 2756, n.6.

[19] I make no determination as to plaintiff's alternative basis for dismissal, that the IIED claim is impermissibly duplicative of her statutory discrimination claims. The Second Circuit has discussed, but has not resolved, the question of whether "a claim for intentional infliction of emotional distress is truly barred as a matter of law when the underlying conduct is actionable under another theory of tort liability." *Roper v. Hynes,* 2006 WL 2773032, at *13 n.5 (S.D.N.Y. 2006); *see Bender v. City of New York*, 78 F.3d 787, 790–92 (2d Cir. 1996).

to dismiss these counts is moot.

*VIII. Individual Liability under New York Executive Law - Counts VIII, IX, and X*

By stipulation, Count IX has been withdrawn and the motion to dismiss that count is moot. Defendants argue that New York Executive Law § 296 does not provide for individual liability and, therefore, the remaining claims against the individual defendants under § 296 in Count VIII (gender bias and sex discrimination) and Count X (pregnancy discrimination) must be dismissed.

According to the New York Court of Appeals:

> [a] corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination based on age or sex under New York's Human Rights Law. . . if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others.[20]

*Patrowich v. Chemical Bank,* 63 N.Y.2d 541, 542 (N.Y. 1984); *see also Patane v. Clark,* 435 F.Supp.2d 306, 312 (S.D.N.Y. 2006) (motion to dismiss denied as to defendants who "ostensibly had the authority to hire and fire" the plaintiff). However, the Second Circuit has sided with courts which "distinguished *Patrowich* by holding that a defendant who *actually participates*

---

[20] Section 296 is also referred to as the Human Rights Law ("HRL").

*in the conduct giving rise to a discrimination claim* may [also] be held personally liable under [subsection 6 of] the HRL," which makes it unlawful to aid or abet any of the practices discussed in the statute, even if that employee lacks the authority to hire and fire.[21] *Tomka v. Seiler*, 66 F.3d 1295, 1317 (2d Cir. 1995) (finding that the district court incorrectly dismissed a claim under § 296 where plaintiff alleged that "individual defendants assaulted her and thereby created a hostile working environment"), abrogated on other grounds by *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998) (emphasis added); *see also Patane,* 435 F.Supp.2d at 313 (noting that although some state courts have disagreed with *Tomka*, federal courts in this circuit are bound to follow the Second Circuit's ruling on this matter); *Perks v. Town of Huntington*, 251 F.Supp.2d 1143, 1160 (E.D.N.Y. 2003) ("[a]lthough this ruling has been criticized, it is binding upon" district courts in this circuit); *Dawson v. County of Westchester*, 351 F.Supp.2d 176, 199 (S.D.N.Y. 2004) (defendant who allegedly created a hostile work environment by "distributing copies of the letters to other officers, making inappropriate comments to plaintiffs, staring at plaintiffs in a disturbing

---

[21] Subsection 6 of the statute reads:

6. It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so.

New York Executive Law § 296(6).

manner and engaging in inappropriate conversations with others within plaintiffs' hearing" could be sued in his individual capacity); *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (allegations that plaintiff was assigned a disproportionate workload on the basis of his race were sufficient to create triable issues of fact as to whether the defendants actually participated in the conduct giving rise to the HRL claim, even though the defendants "merely had the ability to review and comment on the plaintiff's performance"). Thus, under Second Circuit law, this claim may proceed against individual defendants if (1) they have an ownership interest, (2) they have the power to hire and fire or (3) they aided and abetted the discriminatory conduct. Since the complaint does not allege that the individual defendants had the power to hire and fire or that they had an ownership interest,[22] individual liability must rest on an aiding and abetting theory.

With regards to Count VIII, as discussed above, it is at this point not clear what unlawful conduct the plaintiff is alleging, and without knowing that information, it cannot be determined whether the actions allegedly taken by the individual

---

[22] In plaintiff's briefing on this motion she mentions that these employees were "involved in the decision to terminate her employment" but notably does not say they actually had authority to hire and fire her. Plaintiff's Memorandum of Law in Opposition, PP. 6-7.

defendants aided and abetted the unlawful conduct.[23]  Only if and when the complaint is amended to reflect the specific unlawful activity charged can I determine whether the complaint also alleges that any or all of these employees are alleged to have aided and abetted in unlawful activity.[24]  Accordingly, the motion to dismiss on this ground is granted with leave to amend within 30 days.

With regards to Count X, plaintiff again fails to specify what unlawful activity she is alleging.  The complaint merely says that the individual defendants "discriminated against the plaintiff on the basis of pregnancy, childbirth, and/or related medical conditions" in violation of § 296. Complaint, § 82.  There is no way for this court to determine if she is alleging a hostile workplace claim or an unlawful termination claim and, accordingly, no way to evaluate whether the factual allegations made elsewhere in the complaint support an aiding and abetting theory of individual liability.  Accordingly, Count X is dismissed with leave to amend within 30 days.

---

[23] While the complaint indicates that "supervisors," which presumably includes the individual defendants, made discriminatory comments, potentially creating a hostile workplace, nothing indicates that these individual defendants contributed to a decision to unlawfully terminate the plaintiff. Complaint, § 22.  Plaintiff would do well to clarify any alleged individual liability in an amended complaint.

[24] Plaintiff would do well to clarify any alleged individual liability in an amended complaint.

## Conclusion

For the reasons set forth above, the motion to dismiss is granted in part and denied in part without prejudice. Where noted, the plaintiff is given leave to amend the complaint within 30 days of the filing of this Opinion. The Clerk is directed to transmit a copy of the within to the parties.


SO ORDERED.

Dated :   Brooklyn, New York
          January 12, 2007

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge